**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------X

AMANI JAMAL, KAELIN MARTIN, LILY ELLINGHAUS,
and WILLIAM CHRISTOPHER CAVALLO,

                                Plaintiffs,

               - against -

KATHY HOCHUL, as Governor of the State of New York, in
her individual capacity; MILAGROS PEÑA, as President of
SUNY Purchase, in her individual capacity; WESTCHESTER
COUNTY; CITY OF WHITE PLAINS; TOWN/VILLAGE OF
HARRISON; VILLAGE OF PORT CHESTER; VILLAGE OF
LARCHMONT; Chief of the New York State University Police
("UPD") DAYTON TUCKER, in his individual capacity; NYC
Department of Environmental Protection ("DEP") Sergeant
FRANK LYNCH, in his individual capacity; NYC DEP Officer
CHRISTOPHER SHARP, in his individual capacity; NYC DEP
Officer First Name Unknown ("FNU")  SCHWARTZ, in his
individual capacity; UPD Inspector CINDY MARKUS, in her
individual capacity; UPD Lieutenant JAMES MCGOWAN, in
his individual capacity; UPD Officer JAMES FOLEY, in his
individual capacity; Westchester County Officer MALIK L.
BURTS, in his individual capacity; Westchester County Officer
JAVIER DEJESUS, in his individual capacity; Westchester
County Sergeant DANIEL S. DUMSER, in his individual
capacity; Westchester County Sergeant MATHIEU E. RICOZZI,
in his individual capacity; Westchester County Lieutenant PAUL
J. CUSANO, in his individual capacity; Westchester County
Officer MICHAEL P. MAFFEI, in his individual capacity;
Westchester County Officer ROBERT L. CAMAJ, in his
individual capacity; Westchester County Officer BRANDON A.
DAY, in his individual capacity; Westchester County Officer
PAUL S. DESOUSA, in his individual capacity; Westchester
County Officer JOHN J. SEVERI, in his individual capacity;
Westchester County Officer NICHOLAS LOPANO, in his
individual capacity; Westchester County Officer MARILENA T.
SOPHIA, in her individual capacity; Westchester County Officer
ELIOT WILDER, in his individual capacity; Westchester County
Officer RYAN G. WATTS, in his individual capacity;
Westchester County Sergeant TREVOR M. DENNIN, in his
individual capacity; Westchester County Officer THOMAS C.
OLSEN, in his individual capacity; Westchester County Officer

**Case No. 25-cv-6332**

**SECOND AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

TUFAN S. DILSCHMANN, in his individual capacity;
Westchester County Officer TYLER J. SMITH, in his individual
capacity; Westchester County Lieutenant BRIAN M. HESS, in
his individual capacity; Westchester County Captain JAMES B.
GREER, in his individual capacity; UPD Officer MATTHEW
ALTO, in his individual capacity; Officer GARY MCCORD Jr.,
in his individual capacity; Officer OISIN MCGLOIN, in his
individual capacity; Officer RANDY BAKAY, in his individual
capacity; and POLICE OFFICERS JOHN AND JANE DOE 1-10
AT UPD and THE VARIOUS MUNICIPALITIES,

                                        Defendants.

-----------------------------------------------------------------------------X

## **COMPLAINT**

Plaintiffs AMANI JAMAL, KAELIN MARTIN, LILY ELLINGHAUS, and WILLIAM
CHRISTOPHER CAVALLO, (collectively, "Plaintiffs") by and through their counsel, Cohen &
Green PLLC, Gideon Orion Oliver, Esq., The Aboushi Law Firm PLLC, and Maryam Fatouh,
Esq., allege as follows:

## **PREMLIMINARY STATEMENT**

1.      This case arises from the unlawful assault and arrest of Plaintiffs and dozens of
other demonstrators by Defendants during a protest at The State University of New York at
Purchase ("SUNY Purchase"), a public liberal arts college in Purchase, New York.

2.      On the evening of May 2, 2024, in keeping with the tradition of student activism,
Plaintiffs were only four of the many students gathered on the SUNY Purchase lawn to protest the
school's complicity in the ongoing genocide committed by the Israeli government in Gaza with
the active armament, military support, and funding from the United States.

3.      In response to this constitutionally protected assembly, Defendants stormed the
campus with the intention of shutting down the demonstration, preventing Plaintiffs from
continuing their protest, and chilling future gatherings.

4.      Police officers from six (6) different municipalities descended upon the protest and, indiscriminately and with excessive force, arrested student protestors, faculty members, and non-participating bystanders, without probable cause.

5.      Defendants' conduct caused serious and, in many cases, lasting physical and emotional injury to Plaintiffs, including, but not limited to, mental and emotional anguish, humiliation, fear, loss of dignity and freedom, deprivation of civil and constitutional rights, impairment to reputation in the community, and psychological and mental distress.

6.      Thus, Plaintiffs seek damages for Defendants' unlawful policies and practices with regard to policing and responding to lawful demonstrations.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

8.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

9.      The federal civil rights claims in this action are brought pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

10.      An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

11.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) as at least one of the Defendants resides in this district and a substantial part of the events and/or omissions were committed in this district.

## PARTIES

3

12. Plaintiff AMANI JAMAL ("Ms. Jamal") is Palestinian American and is a recent graduate of SUNY Purchase. Ms. Jamal is a resident of the county of Dutchess in New York.

13. Plaintiff KAELIN MARTIN ("Mx. Martin") is a recent graduate of SUNY Purchase. Mx. Martin is a resident of the county of Putnam in New York.

14. Plaintiff LILY ELLINGHAUS ("Ms. Ellinghaus") is a recent graduate of SUNY Purchase. Ms. Ellinghaus is a resident of the county of Westchester in New York.

15. Plaintiff WIILIAM CHRISTOPHER CAVALLO ("Mr. Cavallo") is a recent graduate of SUNY Purchase. Mr. Cavallo is a resident of the county of Suffolk in New York.

16. Defendant KATHY HOCHUL was at all times relevant to this Complaint, and still is, the Governor of New York state. As Governor, Defendant Hochul, at all relevant times, was and is an elected officer and the "State's chief executive," NY State Constitution, Article IV, § 1. As the Governor, she is the commander-in-chief of the New York State Police and National Guard, allowing her to command the police forces to act.

17. Defendant MILAGROS PEÑA was at all times relevant to this Complaint President of SUNY Purchase and violated Plaintiffs' rights as set forth herein by acting ordering and/or effectuating the forceful removal of Plaintiffs while they engaged in constitutionally protected activity on the SUNY Purchase campus.

18. Defendant WESTCHESTER COUNTY ("Westchester") is a municipal entity created and authorized under the laws of the State of New York. Westchester is authorized by law to maintain a police department, and does maintain the Westchester County Police Department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Westchester assumes the risks incidental to the maintenance of a police force and the employment of police officers.

19.     Defendant CITY OF WHITE PLAINS ("White Plains") is a municipal entity created and authorized under the laws of the State of New York. White Plains is authorized by law to maintain a police department, and does maintain the City of White Plains Police Department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. White Plains assumes the risks incidental to the maintenance of a police force and the employment of police officers.

20.     Defendant TOWN/VILLAGE OF HARRISON ("Harrison") is a municipal entity created and authorized under the laws of the State of New York. Harrison is authorized by law to maintain a police department, and does maintain the Town of Harrison Police Department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Harrison assumes the risks incidental to the maintenance of a police force and the employment of police officers.

21.     Defendant VILLAGE OF PORT CHESTER ("Port Chester") is a municipal entity created and authorized under the laws of the State of New York. Port Chester is authorized by law to maintain a police department, and does maintain the Port Chester Police Department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Port Chester assumes the risks incidental to the maintenance of a police force and the employment of police officers.

22.     Defendant VILLAGE OF LARCHMONT ("Larchmont") is a municipal entity created and authorized under the laws of the State of New York. Larchmont is authorized by law to maintain a police department, and does maintain the Larchmont Police Department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Larchmont

assumes the risks incidental to the maintenance of a police force and the employment of police officers.

23.    Defendant NEW YORK STATE UNIVERSITY POLICE ("UPD") CHIEF DAYTON TUCKER was at all times relevant to this Complaint, and still is, Chief of the department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024. At all relevant times, as Chief of Department, Defendant TUCKER had primary responsibility for UPD operations—that is, for the police response on the ground. Within the structure of the UPD, all UPD uniformed members of the service were obligated to obey any lawful order given by him.

24.    Defendant NYC DEPARTMENT OF ENVIRONMENTAL PROTECTION ("DEP") SERGEANT FRANK LYNCH, of the Eastview Precinct Command, was at all times relevant to this Complaint, and still is, a member of the New York City Police Department ("NYPD"). He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024. At all relevant times, as assigned Team Leader, Defendant Lynch had primary responsibility for NYC DEP operations—that is, for the police response on the ground. Within the structure of the NYPD, all uniformed members of the service on his team were obligated to obey any lawful order given by him.

25.    Defendant NYC DEP OFFICER CHRISTOPHER SHARP, of the Eastview Precinct Command, was at all times relevant to this Complaint, and still is, a member of the New York City Police Department ("NYPD"). He violated Plaintiffs' rights as set forth herein by

ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

26.     Defendant NYC DEP OFFICER FIRST NAME UNKNOWN ("FNU") SCHWARTZ, of the Eastview Precinct Command, was at all times relevant to this Complaint, and still is, a member of the New York City Police Department ("NYPD"). He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

27.     Defendant UPD INSPECTOR CINDY MARKUS was at all times relevant to this Complaint, and still is, a member of the New York State University Police. She violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024..

28.     Defendant UPD LIEUTENANT JAMES MCGOWAN was at all times relevant to this Complaint, and still is, a member of the New York State University Police. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

29.     Defendant UPD OFFICER JAMES FOLEY was at all times relevant to this Complaint, and still is, a member of the New York State University Police. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

30.     Defendant POLICE OFFICER MALIK L. BURTS was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

31.     Defendant POLICE OFFICER JAVIER DEJESUS was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

32.     Defendant POLICE SERGEANT DANIEL S. DUMSER was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

33.     Defendant POLICE SERGEANT MATHIEU E. RICOZZI was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

34.     Defendant POLICE LIEUTENANT PAUL J. CUSANO was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful

dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

35.     Defendant POLICE OFFICER MICHAEL P. MAFFEI, was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

36.     Defendant POLICE OFFICER ROBERT L. CAMAJ was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

37.     Defendant POLICE OFFICER BRANDON A. DAY was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

38.     Defendant POLICE OFFICER PAUL S. DESOUSA was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

39.     Defendant POLICE OFFICER JOHN J. SEVERI was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

40.     Defendant POLICE OFFICER NICHOLAS LOPANO was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

41.     Defendant POLICE OFFICER MARILENA T. SOPHIA was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. She violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

42.     Defendant POLICE OFFICER ELIOT WILDER was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

43.     Defendant POLICE OFFICER RYAN G. WATTS was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful

dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

44. Defendant POLICE SERGEANT TREVOR M. DENNIN was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

45. Defendant POLICE OFFICER THOMAS C. OLSEN was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

46. Defendant POLICE OFFICER TUFAN S. DILSCHMANN was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

47. Defendant POLICE OFFICER TYLER J. SMITH was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

48.    Defendant POLICE LIEUTENANT BRIAN M. HESS was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

49.    Defendant POLICE CAPTAIN JAMES B. GREER was at all times relevant to this Complaint, and still is, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

50.    Defendant UPD OFFICER MATTHEW ALTO was at all times relevant to this Complaint, and still is, a member of the New York State University Police. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

51.    Defendant POLICE OFFICER GARY MCCORD, Jr. was at all times relevant to this Complaint, a member of the Port Chester Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

52.    Defendant POLICE OFFICER OISIN MCGLOIN was at all times relevant to this Complaint, a member of the Westchester County Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest,

and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

53.     Defendant POLICE OFFICER RANDY BAKAY was at all times relevant to this Complaint, a member of the Harrison Police Department. He violated Plaintiffs' rights as set forth herein by ordering and/or participating in their forceful and unlawful dispersal, arrest, and/or removal while they engaged in and/or observed protest activities at the SUNY Purchase campus on May 2, 2024.

54.     All of the individual defendants, including Defendant Does 1-10, descended on the protest described herein and were present for but failed to intervene in, and/or participated in the pseudo-encirclement of the protestors, and/or engaged in some of the other conduct alleged below.

55.     All of the individual defendants, including Defendant Does 1-10, were police officers assigned to the police response at the SUNY Purchase quad during the protest on May 2, 2024.

56.     The names "John Doe" and "Jane Doe" are fictitious and refer to individual officers involved in Plaintiffs' unlawful arrests, as detailed below, whose true identities are presently unknown to Plaintiffs.

57.     At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York.

58.     Each and all of the acts and omissions of Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the defendant municipalities and the City and State of New York.

59.     At all relevant times, Defendant police officers were duly appointed officers, employees, or agents of the UPD, the defendant municipalities, and/or the City or State of New York, acting on their behalf and within the scope of their official duties and authority.

60.     Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

61.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

62.     Each individual Defendant is sued in her or his individual and official capacities.

**COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW.**

63.     Plaintiffs timely served Notices of Claim upon Westchester County, City of White Plains, Town/Village of Harrison, Village of Port Chester, and Village of Larchmont.

64.     Plaintiff JAMAL attended a hearing at Village of Mt. Kisco/Port Chester pursuant to section 50-h of the New York General Municipal Law on February 20, 2025.

65.     Plaintiff JAMAL attended a hearing at Westchester County pursuant to section 50-h of the New York General Municipal Law on February 27, 2025.

66.     Plaintiff MARTIN attended a hearing at City of White Plains pursuant to section 50-h of the New York General Municipal Law on June 13, 2025.

67.     Plaintiff MARTIN attended a hearing at Town/Village of Harrison pursuant to section 50-h of the New York General Municipal Law on July 11, 2025.

68.    Plaintiff ELLINGHAUS attended a hearing at Town/Village of Harrison pursuant to section 50-h of the New York General Municipal Law on July 11, 2025.

69.    Plaintiff CAVALLO attended a hearing at Village of Mt. Kisco/Port Chester pursuant to section 50-h of the New York General Municipal Law on February 20, 2025.

70.    More than thirty days have elapsed since Plaintiffs served Notices of Claim and none of the defendant municipalities have offered adjustment or payment thereof.

71.    This action is commenced within one year and 90 days after the claims herein arose.

## JURY DEMAND

72.    Plaintiffs demand a trial by jury in this action on each and every one of their claims for which a jury trial is legally available.

## STATEMENT OF FACTS

73.    On April 29, 2024, New York State Governor Kathy Hochul wrote a letter to college and university presidents across the state, urging them to "aggressively guard against antisemitism and all forms of hateful or discriminatory rhetoric."

74.    Soon thereafter, on the evening of May 2, 2024, SUNY Purchase students launched a silent sit-in on the campus lawn to protest the ongoing genocide unfolding in Gaza by Israel and demand SUNY Purchase divest from entities profiting from this horror, while remaining compliant with the university's policy regarding protest, as promulgated under 8 NYCRR §535. 8NYCRR §535 prohibits certain conduct—none of which Plaintiffs were engaged in—while also explicitly protecting the right to free speech and assembly. See §535.4 ("no student, faculty or other staff member or authorized visitor shall be subject to any limitation or penalty solely for the expression of his views nor for having assembled with others for such purpose.")

75.    Raise the Consciousness, a student political group, organized this nonviolent action demanding: financial transparency from the SUNY Purchase Board of Trustees regarding investments with any companies with ties to any defense contractor, weapons manufacturer, or surveillance company, including those with ties to Israel; acknowledgement of the genocide taking place in Gaza; a call for a cease fire; a public apology to SUNY Purchase's Palestinian students whose safety had been disregarded by the Administration; as well as amnesty from academic sanctions in connection with this protest and other nonviolent protests.[1]

76.    Beginning around 5:00 p.m. on May 2, 2024, a group of SUNY Purchase students, including Plaintiffs, gathered on the campus quad to pitch tents, lay tarps, and organize supplies.

77.    Like most SUNY Purchase students and as encouraged by the school, Plaintiffs had regularly used the quad for an array of activities in the past, including protest activities.

78.    The SUNY campus quad is located at the center of the Purchase campus, and is a space regularly used by students, faculty, and visitors at all times of day to hang out, play music, study, play games like soccer and Frisbee, and of course protest.

79.    The quad borders a student residence hall and is otherwise surrounded by classrooms and administrative buildings.

80.    The rotunda of the quad is at the center of campus, and you have to cross through the quad to access most places on campus.

81.    For the students and faculty who live on campus, the quad is akin to their backyard.

**Plaintiff Amani Jamal.**

82.    Ms. Jamal participated in the protest at the SUNY Purchase campus on the night of May 2, 2024.

---

[1] https://www.instagram.com/p/C6e8PRDLTUX/?img_index=1

83.     She made her way to the campus quad at approximately 9:00 p.m.

84.     The quad is a large grass lawn surrounded by several campus buildings where she had often gathered with others for previous demonstrations.

85.     Upon reaching the campus quad, Ms. Jamal joined a circle of people who sat quietly on the quad lawn.

86.     At approximately 9:30 pm or shortly thereafter, the group, still seated in a circle on the ground, remained silent in compliance with campus quiet hours, which come into effect at 10:00 p.m.

87.     Prior to 10:00 p.m., Defendant Dayton Tucker, Chief of the SUNY Purchase University Police Department ("UPD"), appeared on the quad and informed the demonstrators that quiet hours were about to begin.

88.     Complying with quiet-hours regulations, the group of protesters—including Plaintiffs—lowered their voices to hushed tones and conscientiously minimized any noise in accordance with SUNY Purchase policy.

89.     Almost immediately thereafter, Defendants Westchester County Police Officers, along with the UPD, swiftly charged towards the group from the surrounding parking lot.

90.     Westchester County's deployment of police officers to SUNY Purchase on May 2, 2024 was part of an officially authorized and coordinated multi-agency law-enforcement response ("mutual aid").

91.     In fact, the morning after the Plaintiffs' arrests, Westchester County issued a public statement confirming that SUNY Purchase University Police requested mutual aid from the Westchester County Police Department.

92.     Likewise, following the Plaintiffs' arrests, Westchester County Executive George Latimer publicly stated that Westchester County Police were dispatched to the campus at the request of SUNY Purchase and were "assisting in implementing decisions made by the college.[2]

93.     Utter chaos ensued as Defendant Officers violently and indiscriminately began making arrests.

94.     Ms. Jamal continued to watch in horror as her female classmate was slammed onto the ground by Defendant Officers, her face forcefully pushed down into the lawn.

95.     Defendant Officers formed a wall surrounding the group.

96.     Defendant Officers blocked any possible exit for Ms. Jamal.

97.     Defendant Officers Does 1-2 then yanked Ms. Jamal by both elbows, twisted her arms behind her back, and handcuffed her aggressively, all the while screaming at her to "stop resisting!"

98.     Ms. Jamal, shocked, told Defendant Does 1-2 that she was in pain as a result of them yanking on her arms but they did not help her in any way, including not offering her any medical assistance.

99.     Defendant Does 1-2 operated in a manner that was so chaotic and reckless that they only haphazardly handcuffed Ms. Jamal, causing the cuff on her right hand to slip off.

100.    Defendants then left her unattended, and she stood around waiting for an officer's attention as she watched the chaos continue to unfold.

101.    Defendant Doe 3 re-cuffed Ms. Amani so tightly that her hands felt like they were burning.

---

[2] https://newyork.news12.com/suny-purchase-students-scared-to-go-outside-after-college-police-raid-encampment

102.    Despite Ms. Jamal's numerous complaints that the handcuffs were far too tight and hurting her, the Defendants to whom she complained did nothing to alleviate the excessive tightness of the cuffs for approximately as long as fifteen minutes.

103.    Multiple officers herded Ms. Jamal onto a police transport bus, which was extremely hot, and kept her confined inside with closed doors and windows for an extended period of time.

104.    At approximately 10:30 p.m., Ms. Jamal was transported to the Mount Kisco Precinct of the Westchester County Department of Public Safety, where she was forced to stay in a cramped holding cell with little to no ventilation for over three hours.

105.    Her wrists remained shackled in overly tight metal handcuffs for almost the entire duration.

106.    In response to being asked why Ms. Jamal's handcuffs remained on while she was in the cell, Defendant Doe 1 admitted he had "forgotten" to remove them, which had needlessly prolonged her distress and inflicted unnecessary pain.

107.    Ms. Jamal was denied timely restroom access while confined in police custody.

108.    At approximately 1:30 a.m., Ms. Jamal was given a Desk Appearance Ticket and released from custody.

109.    The criminal charge was ultimately dismissed and sealed, consistent with Ms. Jamal's innocence.

110.    As a result of Defendants' conduct, Ms. Jamal sustained mental, emotional, and physical injuries including, but not limited to, pain and swelling from a sprained wrist.

111.    She has also suffered profound and ongoing disruptions to her academic and athletic pursuits.

112.    Further, Defendants had forcibly removed Ms. Jamal's hat which read "Make Palestine Free Again" during the course of her arrest, and at no time was this hat ever returned to her.

113.    This hat can never be replaced, as it belonged to Ms. Jamal's grandfather and held deep sentimental value.

**Plaintiff Kaelin Martin.**

114.    Mx. Martin participated in the protest at the SUNY Purchase campus on the night of May 2, 2024.

115.    Mx. Martin had arrived at the campus quad earlier that day, where they, along with other protestors, set up tarps.

116.    All the while, UPD officers—including Chief Dayton Tucker—maintained a barrier surrounding the protest site.

117.    At approximately 9:00 p.m., Mx. Martin and others advised the demonstrators to observe "quiet hours," lower their voices to hushed tones, and fully comply with campus policy.

118.    Mx. Martin experienced an intense sense of dread and heightened fear when, immediately after, they noticed Defendants' helicopter hovering low overhead, its blinding spotlight shining on the student demonstrators.

119.    Defendant Chief Tucker approached Mx. Martin.

120.    Mx. Martin asked Defendant Chief Tucker in sum and substance which SUNY Purchase policy or code the protestors were violating, and where they should go instead.

121.    Defendant Chief Tucker failed to cite a single example of prohibited conduct from the Rules for the Maintenance of Public Order or any other SUNY Purchase policy.

122.    Suddenly, Defendants, including Harrison Police Department police officer Defendant Randy Bakay, charged Mx. Martin and the other protestors, violently and forcefully pushing and pulling them in multiple different directions, and then aggressively handcuffing them one by one.

123.    At some point during this brutal and unwarranted assault, Defendant Doe 4 violently hurled the student beside Mx. Martin to the ground, forcefully pulling Mx. Martin along with her, and causing Mx. Martin to crash their head into the ground.

124.    Defendant Doe 4's brutal assault on Mx. Martin left them panicked, disoriented, and dizzy from the blunt impact to their head.

125.    Trying to avoid further injury at the hands of Defendant Doe 4, Mx. Martin quickly scrambled to their feet.

126.    Mx. Martin felt multiple violent jostles as their arms were yanked and pulled by multiple officers, including Defendant Doe 5.

127.    Defendant Doe 5 put their face mere inches from Mx. Martin's while screaming at them.

128.    Defendant Doe 4 or Doe 5 may have been PO Randy Bakay, who is listed on Mx. Martin's arrest paperwork as their arresting officer.

129.    Defendants continued to charge at Mx. Martin and the other protestors, shoving them backwards into tables.

130.    Mx. Martin was violently tossed to the ground once again, this time flipping head-first over a table onto concrete, hitting their head again.

131.    Defendants then twisted Mx. Martin's injured arm behind their back, slapped on suffocatingly tight metal handcuffs, then hauled them towards a UPD van.

132.    Mx. Martin informed Defendants that their handcuffs were unbearably tight and causing severe pain and discomfort, and pleaded for Defendants to loosen them, to no avail.

133.    Defendant Doe 4 confiscated Mx. Martin's belongings, which included all of their prescription medications.

134.    At no time were their possessions ever returned.

135.    At approximately 10:30 pm, Defendant Doe 4 put Mx. Martin on a transport van with closed airtight windows and left them to swelter in the oppressive heat of the motionless vehicle.

136.     When they arrived at the White Plains police precinct, Mx. Martin was confined to a cramped holding cell alone, their head still spinning and in severe pain.

137.    They begged for water for approximately twenty minutes before being handed a visibly filthy cup.

138.    Defendants denied Mx. Martin timely restroom access while they were in custody.

139.    While in the holding cell, Mx. Martin was in obvious distress which they clearly communicated to Defendants, and they temporarily lost consciousness.

140.    At approximately 2:00 a.m., Mx. Martin was given a Desk Appearance Ticket and released from custody.

141.    The Defendant officers conditioned Mx. Martin's release on their signing a document—yet, in Mx. Martin's compromised physical and emotional state, they were unable to read or comprehend its terms.

142.    The criminal charge was ultimately dismissed and sealed, consistent with Mx. Martin's innocence.

143.    As a result of Defendants' conduct, Mx. Martin sustained mental, emotional, and physical injuries including, but not limited to, pain and other symptoms typically associated with a concussion, and pain in their thumb and wrist.

144.    They have also suffered profound and ongoing disruptions to their academic and professional pursuits.

**Plaintiff Lily Ellinghaus.**

145.    Ms. Ellinghaus participated in the protest at the SUNY Purchase campus on the night of May 2, 2024.

146.    Ms. Ellinghaus arrived at the campus quad around 6:00 p.m.

147.    As the evening progressed, Ms. Ellinghaus became aware of the growing police presence, both surrounding the quad and on the wider campus.

148.    Shortly before 10:00 pm, Ms. Ellinghaus sat down silently on the lawn with other protestors.

149.    Ms. Ellinghaus felt increasingly uneasy and fearful as Defendants' helicopter hovered overhead, its engine loudly whirring and it spotlight blinding the seated class members.

150.    Shortly after 10:00 p.m., Defendants charged towards Ms. Ellinghaus, greatly frightening her.

151.    As the Defendants began violently arresting the protestors, Ms. Ellinghaus took out her phone to document their unrestrained brutality.

152.    She was particularly horrified by the group of Defendants surrounding Ms. Jamal, physically assaulting her while simultaneously trying to subdue and handcuff her.

153.    Ms. Ellinghaus pleaded with the Defendants, piled on top of Ms. Jamal, to cease their violent assault.

154.    It was during this appalling frenzy that Defendant Doe 6 lost her balance and stumbled backwards into Ms. Ellinghaus, causing her to fall.

155.    Immediately, Defendant Officers Doe 6 and 7 lunged towards Ms. Ellinghaus.

156.    Several Defendant officers ruthlessly flung Ms. Ellinghaus onto her back.

157.    Her head crashed into the ground with such ferocity that she immediately felt nausea and disorientation.

158.    Defendant Doe 6 proceeded to aggressively handcuff Ms. Ellinghaus so tightly that she began to vomit behind her face covering.

159.    Despite her pleas to stop walking as she was getting sick, Defendant Doe 6 kept walking her forward.

160.    After some time of asking to stop, Defendant Officer John Doe #6 let Ms. Ellinghaus stop so he could pull down her mask.

161.    Ms. Ellinghaus was then dragged toward the transport van, covered in vomit.

162.    Despite her visible distress and pleas for help, Defendants failed to provide Ms. Ellinghaus with any medical attention.

163.    Ms. Ellinghaus' backpack, which contained her personal laptop computer amongst other belongings, was carelessly disposed of in a nearby waste receptacle.

164.    Upon arrival to the police precinct in Harrison at approximately 11:00 pm, Ms. Ellinghaus was in shock, felt lightheaded, dizzy, and nauseas directly due to the Defendants' ruthlessly violent actions during her arrest.

165.    Upon information and belief, Harrison officers participated in the May 2, 2024 operation pursuant to an official coordinated response, namely the Westchester County's Mutual Aid & Rapid Response Plan.

166.    When Ms. Ellinghaus was finally able to retrieve her belongings, Defendant officers advised Ms. Ellinghaus's parents, in sum and substance, to permanently discard her pillow, on the grounds that it had been contaminated by raccoon activity.

167.    At approximately 2:30 a.m., Ms. Ellinghaus was given a Desk Appearance Ticket and released from custody.

168.    The criminal charge was ultimately dismissed and sealed, consistent with Ms. Ellinghaus's innocence.

169.    As a result of Defendants' conduct, Ms. Ellinghaus sustained mental, emotional, and physical injuries including, but not limited to, pain and other symptoms typically associated with a concussion, and bruising on her wrists and legs.

170.    She has also suffered profound and ongoing disruptions to her academic and professional pursuits.

**Plaintiff William Christopher Cavallo.**

171.    Mr. Cavallo observed, but did not participate in, the protest at the SUNY Purchase campus on the night of May 2, 2024.

172.    At approximately 9:40 p.m. that evening, Mr. Cavallo left his night class and made his way to the campus quad.

173.    While there, Mr. Cavallo made a concerted effort to remain seated on a bench on the perimeter of the protest area.

174.    Alarmed by the growing heavy police presence, he decided to record the police officers' movements to observe and document their conduct.

175.    Shortly after 10:00 p.m., Mr. Cavallo watched (and recorded) in horror as people were violently arrested in quick succession.

176. Mr. Cavallo had only been recording the scene for approximately three minutes when he was slammed to the ground by Defendant Doe 8, Defendant Doe 9 and Defendant Doe 10.

177. Defendant Doe 8 violently drove a knee into the back of Mr. Cavallo's neck.

178. Mr. Cavallo stated that he was not resisting arrest, even offering his raised arms to facilitate the placement of handcuffs and to prevent further harm and injury.

179. However, Defendant John Doe 8 did not relent in his violent aggression, forcefully pressing into Mr. Cavallo's neck and causing immediate pain and dizziness.

180. Defendant Does 8-10 then encircled Mr. Cavallo, forcefully restraining him with extremely tight zip-tie cuffs around his wrists.

181. Each twist of the plastic bit into his skin, sending sharp pain radiating up his arm.

182. In pain, Mr. Cavallo repeatedly alerted every nearby officer that the cuffs Defendants put him in were cutting off his circulation.

183. The officers to whom he plead for help did nothing to alleviate the excessive tightness of the cuffs.

184. Defendants proceeded to place Mr. Cavallo in the sweltering hot transport vehicle, where he remained until he arrived at the police precinct in Port Chester at approximately 11:00 p.m.

185. Upon information and belief, prior civil rights litigation and Notices of Claim involving Port Chester and Port Chester officers—including litigation naming Defendant Officer Gary McCord—placed Port Chester policymakers on notice of recurring allegations of unconstitutional arrests and excessive force.

186.    There, Mr. Cavallo was confined to a small, overcrowded, and extremely hot holding cell.

187.    At approximately 2:30 a.m., Mr. Cavallo was given a Desk Appearance Ticket and released from custody.

188.    The criminal charge was ultimately dismissed and sealed, consistent with Mr. Cavallo's innocence.

189.    As a result of Defendants' conduct, Mr. Cavallo sustained mental, emotional, and physical injuries including, but not limited to, pain and other symptoms typically associated with a concussion, and pain in his left wrist.

190.    He has also suffered profound and ongoing disruptions to his academic and professional pursuits.

## **FIRST CLAIM FOR RELIEF**

### **Unlawful Seizure / False Arrest**

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

191.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

192.    Upon information and belief, Defendants seized and arrested Plaintiffs without any judicial warrant authorizing them to seize any Plaintiff.

193.    This conduct was unreasonable and was done without privilege or lawful justification.

194.    Plaintiffs did not consent and were conscious of their confinements by Defendants.

195.    Defendants did not have individualized probable cause to seize, detain, or arrest Plaintiffs.

196.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

197.     The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

198.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

199.     Defendants' use of force against Plaintiffs was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

200.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

201.     The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

### First Amendment

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the First and Fourteenth Amendments to the United States Constitution***

202.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

203.    In committing the acts and omissions set forth herein, Defendants acted under color of state law, individually and in concert, without lawful justification to deprive Plaintiffs of their rights to speech, expression and to assemble in violation of the First, Fifth, and Fourteenth Amendments to the United States.

204.    Defendants imposed restrictions on protected speech and/or conduct that violated Plaintiffs' First Amendment rights, including, but not limited to, in unlawfully seizing Plaintiffs, in subjecting Plaintiffs to excessive force, in subjecting Plaintiffs to Defendants' protest policing policies, and in otherwise violating Plaintiffs' rights and engaging in the acts and omissions complained of herein.

205.    Defendants' retaliatory restrictions Plaintiffs complain of herein imposed upon Plaintiffs' First Amendment rights to participate in, observe, and/or stand nearby speech, conduct, association, and/or other expressive activities protected by the First Amendment in public were themselves regulations on Plaintiffs' protected conduct that:

a. Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or,

b. Were content-neutral but nonetheless lacked sufficiently narrow tailoring to serve a significant governmental interest in that the restrictions substantially burdened more protected speech and/or conduct than was necessary to serve those interests, and/or failed to adequately provide alternatives for Plaintiff's protected expression, including in that Plaintiff's abilities to communicate effectively were threatened or limited; and/or

c. Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's abilities to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

d. Amounted to the imposition of strict liability on Plaintiff for engaging in protected speech and/or expression.

206.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of Plaintiffs' federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

207.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

### First Amendment Retaliation

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the First and Fourteenth Amendments to the United States Constitution*

208.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

209.    Defendants retaliated against Plaintiffs for engaging in speech and/or conduct protected by the First Amendment.

210.    Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiffs' protected speech and/or conduct.

211.    Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiffs from continuing to engage in such protected speech and/or conduct.

212.    Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiffs from engaging in similar protected conduct in the future.

213.    Additionally, as discussed elsewhere herein, Defendants designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiffs to violations of their First Amendment rights.

214.    Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiffs' First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

215.    Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiffs' First Amendment retaliation claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—in response to the perceived viewpoint and/or message expressed by Plaintiffs.

216.    Additionally, the offenses charged against Plaintiffs, which Defendants might argue provided probable cause for Plaintiffs' arrests, were all offenses that Defendants typically exercise their discretion not to enforce, or not to make arrests in connection with.

217.    Each Plaintiff suffered actual chill in that each Plaintiff was prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident; and/or suffered adverse effects on their protected speech and/or conduct; and/or otherwise suffered some concrete harm(s).

218.    Additionally, in many cases, Defendants apparently permitted, acquiesced in, and/or facilitated the speech and/or other expressive conduct in which Plaintiffs were engaging, before suddenly using force and/or making arrests, without first having given reasonable notice

that such force and/or arrest activity would result if Plaintiffs did not conduct themselves differently and/or disperse, as well as a meaningful opportunity to comply.

219.    Additionally, as discussed elsewhere herein, Defendants designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in arresting and detaining Plaintiffs subjected Plaintiffs to the violations of their First Amendment rights described elsewhere herein.

220.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

221.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FIFTH CLAIM FOR RELIEF

### Due Process

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Protected Under the Fifth and Fourteenth Amendments to the United States Constitution***

222.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

223.    In addition to the Due Process violations described above, Plaintiffs hereby mount an as-applied, Due Process-based challenge to the application of N.Y.S. Penal Law § 140.05 to their conduct and the events leading up to their arrests, as well as to their related charging and/or prosecutions.

224.    As described above, Defendants enforced offenses in a manner that rendered them constitutionally void for vagueness and/or being overbroad, such that their enforcement against

Plaintiffs violated their Due Process rights, in that Defendants' enforcement in connection with those offenses failed to provide and/or reflected the absence of adequately clear standards to guide police officials' extremely broad discretion to arrest anyone at their whim, based on *ad hoc* determinations, often without fair warning and/or instructions on where Plaintiffs could continue engaging in their First Amendment-protected activity.

225.    Additionally, as discussed elsewhere herein, Defendants designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in seizing and/or retaining Plaintiffs' property and/or detaining Plaintiffs in the conditions as described subjected Plaintiffs to the violations of their Due Process rights described elsewhere herein.

226.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

227.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

<u>**SIXTH CLAIM FOR RELIEF**</u>

**Deprivation of Fair Trial Rights**

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Protected Under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution***

228.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

229.    Defendants fabricated evidence of a material nature, likely to influence a jury's decision, intentionally forwarded that evidence to prosecutors, as a result of which Plaintiffs suffered liberty deprivations and other injuries.

230.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

231.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SEVENTH CLAIM FOR RELIEF

### Malicious Prosecution

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Protected Under the Fourth and Fourteenth Amendments to the United States Constitution*

232.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

233.    Defendants were directly and actively involved in the initiation or prosecution of criminal proceedings against Plaintiffs, including by supplying and creating false information that was included in police paperwork and providing falsely sworn information in accusatory instruments.

234.    Defendants misrepresented and falsified evidence and/or failed to make a full statement of the relevant evidence – including potentially exculpatory evidence.

235.    Defendants lacked probable cause to initiate and continue criminal proceedings against Plaintiffs.

236.    Defendants acted with malice in initiating criminal proceedings against Plaintiffs.

237.    Notwithstanding Defendants' misconduct, the criminal proceedings against Plaintiffs were favorably terminated.

238.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

239.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## EIGHTH CLAIM FOR RELIEF

### Violations of the New York State Constitution

240.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

241.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of the defendant municipalities and/or the City or State of New York, clothed with and/or invoking state power and/or authority, and, as a result, the defendant municipalities are liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

242.    Defendants, acting under color of law, violated Plaintiffs' rights pursuant to Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution.

243.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiffs' rights under those sections.

244.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

245.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## NINETH CLAIM FOR RELIEF

### Violations of New York State Common Law
#### *Assault*

246.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

247.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of the defendant municipalities and/or the City or State of New York, clothed with and/or invoking state power and/or authority, and, as a result, the defendant municipalities are liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

248.    Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiffs in fear of imminent harmful or offensive contact.

249.    Defendants did thereby inflict assault upon the Plaintiffs.

250.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

251.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TENTH CLAIM FOR RELIEF

### Violations of New York State Common Law
### *Battery*

252.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

253.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of the defendant municipalities and/or the City or State of New York, clothed with and/or invoking state power and/or authority, and, as a result, the defendant municipalities are liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

254.    Defendants committed battery within the meaning of New York common law against Plaintiffs by intentionally physically contacting Plaintiffs without Plaintiffs' consent.

255.    Defendants did thereby inflict battery upon the Plaintiffs.

256.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

257.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## ELEVENTH CLAIM FOR RELIEF

**Violations of New York State Common Law**
*Conversion*

258.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

259.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of the defendant municipalities and/or the City or State of New York, clothed with and/or invoking state power and/or authority, and, as a result, the defendant municipalities are liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

260.    Defendants committed conversion by intentionally taking possession of and/or interfering with Plaintiffs' personal property in derogation of Plaintiffs' rights.

261.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

262.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TWELFTH CLAIM FOR RELIEF

**Violations of New York State Common Law**
*False Arrest, False Imprisonment, and Unreasonable Detention*

263.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

264.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of the defendant municipalities and/or the City or State of New York, clothed with and/or invoking state power and/or authority, and, as a result, the defendant municipalities are liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

265.    By the actions described above, the police officials described above did falsely arrest and/or imprison Plaintiffs within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiffs were conscious of the confinement, and it was without their consent.

266.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

267.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### THIRTEENTH CLAIM FOR RELIEF

**Violations of New York State Common Law**
***Negligent Training and Supervision***

268.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

269.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of the defendant municipalities and/or the City or

State of New York, clothed with and/or invoking state power and/or authority, and, as a result, the defendant municipalities are liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

270.    Upon information and belief, the defendant municipalities supervised and trained the police officials described above.

271.    The acts and conduct of the police officials were the direct and proximate cause of injury and damage to the Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

272.    Defendants' acts and omissions were the direct and proximate cause of injury and damage to the Plaintiffs and violated their rights as guaranteed by the laws and Constitution of the State of New York.

273.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

274.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTEENTH CLAIM FOR RELIEF

### Violations of New York State Common Law
### *Excessive Detention*

275.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

276.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or

while they were acting as agents and employees of the defendant municipalities and/or the City or State of New York, clothed with and/or invoking state power and/or authority, and, as a result, the defendant municipalities are liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

277.    Defendants deliberately detained protesters for excessive and unreasonably prolonged periods of time.

278.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

279.    The unlawful conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them

## FIFTEENTH CLAIM FOR RELIEF

### Violations of New York Civil Rights Law § 79-P Right To Record

280.    Plaintiffs hereby reallege and incorporate by reference all of the preceding paragraphs as though they were fully set forth herein.

281.    Prior to their assault, battery, and arrest, Plaintiffs were exercising their rights under New York Civil Rights Law § 79-P, the New Yorker's Right to Monitor Act, to record law enforcement activity.

282.    In arresting Plaintiffs, Defendants exceeded their authority because their conduct was inconsistent with New York Civil Rights Law § 79-P and the Federal Constitutional.

283.    All Defendants violated New York Civil Rights Law § 79-P in that Plaintiffs were while they "exercised or attempted to exercise the right established in subdivision two of this

section to record a law enforcement activity and an officer acted to interfere with that person's recording of a law enforcement activity" in one of the specified ways.

284.    Defendants unlawfully arrested Plaintiffs to deter them from exercising their right to record law enforcement activity.

285.    New York Civil Rights Law § 79-P creates a private right of action that explicitly provides for punitive damages and injunctive relief, as well as mandatory attorneys' fees and expert fees.

286.    New York Civil Rights Law § 79-P defines "record" and the related right in extremely broad terms.

287.    Specifically, the law creates a right of action to sue for any law enforcement interference with the right, including "attempting to prevent [a] person from recording law enforcement activity." New York Civil Rights Law § 79-P(3)(i); *see also*, *id* § (iv).

288.    Similarly, there is a cause of action where an officer — regardless of the fact of recording — engages in "commanding that the person cease recording law enforcement activity when the person was nevertheless authorized under law to record," as happened here. New York Civil Rights Law § 79-P(3)(iii).

289.    Thus, the statute creates a right of action, and that right — like the similar First Amendment right — "does not depend on whether [a plaintiff's] attempt to videotape was frustrated" (Gericke v. Begin, 753 F.3d 1, 3 n.2 (1st Cir. 2014)), or for that matter, only intended to create the impression someone was recording.

290.    Defendants' actions and policies alike violate New York Civil Rights Law § 79-P such that all the remedies available thereunder are appropriate.

291.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## JURY DEMAND

292.    Plaintiffs request a jury trial on all issues capable of being tried and determined by a jury pursuant to Fed. R. Civ. P. 38.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

i.      Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.     Actual damages against the municipal Defendants in an amount to be determined at trial;

iii.    Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia*, 42 U.S.C. § 1988 and New York common law; and

iv.     Such other relief as the Court deems just and proper.

[Signatures on Following Page]

43

Dated: January 9, 2026
      Queens, NY

**COHEN&GREEN P.L.L.C.**

Elena L. Cohen
J. Remy Green
Regina Yu
Leena M. Widdi
Maryam Fatouh *(pro hac vice)*
1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
elena@femmelaw.com

**THE ABOUSHI LAW FIRM P.L.L.C.**

Tahanie A. Aboushi, Esq.
1441 Broadway, 5th Floor
New York, NY 10018
t: (212) 391-8500
tahanie@aboushi.com

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY  10007
t: (718) 783-3682
Gideon@GideonLaw.com